UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KAREL VAN DYK,

        Plaintiff,

    v.

VEA TELECOMS USA CO. d/b/a VEA
CONNECT,

        Defendant.

Case No. 25-cv-00905-JPG

## MEMORANDUM AND ORDER

This case is before the Court on Plaintiff Karel Van Dyk's Motion for Summary Judgment (Doc. 21). He asks the Court to grant summary judgment in his favor on all six of his claims. Defendant VEA Telecoms USA filed a response (Doc. 22).

## I.    BACKGROUND

A.  Defendant's Request to Strike Exhibits:

As a preliminary matter, the Court must consider whether to strike certain exhibits that Plaintiff attached to his motion. In his statement of material facts, Plaintiff cites only Exhibit A and certain pages of Exhibit B. In the argument section of his motion, however, Plaintiff cites to additional pages of Exhibit B and to Exhibit C. These additional citations do not comply with the Local Rules, which states that "[b]riefs in support of a motion for summary judgment must contain a Statement of Material Facts which sets forth each relevant, material fact in a separately numbered paragraph" that includes "specific citation(s) to the record." SDIL-LR 56.1(a). Thus, the Court has discretion to strike the improperly cited exhibits. *See* SDIL-LR 56.1(h). The Court declines to strike the exhibits and will instead disregard the additional citations when resolving this motion.

B.  Relevant Facts:

The admissible evidence and the reasonable inferences that can be drawn from it, viewed in Defendant's favor, establish the following relevant facts.[1]

There are two subsidiaries of VEA Group that are relevant to this litigation. The first is Vatel (Pty) Ltd, which is based in South Africa. The second is Defendant, which has its primary office located in North Carolina.

Plaintiff is South African. He was initially employed by Vatel (Pty) Ltd. In spring of 2023, Open Fiber USA, Defendant's sole customer, notified Defendant that it would allocate a large portion of its North Carolina build work to Defendant. It also notified Defendant that it would be expanding its network in South Carolina and Georgia, with a significant portion of that work assigned to Defendant. Defendant, with Open Fiber USA's support, began to increase its workforce in anticipation of these projects.

Because of his experience with Vatel (Pty) Ltd., Plaintiff possessed the knowledge and skills Defendant needed for its operations. On behalf of Defendant, Nicol Kriek sent Plaintiff an offer of employment for the position of Operations Manager. It stated that the salary for the role would be $144,000, payable in monthly installments of $12,000.

Plaintiff responded to the email and asked six questions, three of which are relevant here. First, he asked "Will a relocation fee be applicable to get settled in the US?" Kriek responded "The $6,000.00 is intended to assist employee with settling in upon arrival." Second, he asked

---

[1] In its response brief, Defendant responded to Plaintiff's statement of material facts and set forth their own statement of additional material facts. Plaintiff did not respond to Defendant's statement of additional material facts. The Court finds that Defendant's statement of additional material facts is supported by the record, and therefore, deems those facts admitted for the purposes of this motion. *See* SDIL-LR 56.1(g); *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (collecting cases).

"Will there be an opportunity for my wife to work for the company or will we have seek other employment opportunities?" Kriek responded "The company would like to give your wife the opportunity to work for us yes." Third, he asked "The package you offered is very close to what I had in mind with all costs considered, will it be possible to increase to $13,000.00?" Kriek responded "At this point we are benchmarking your salary at this level."

Plaintiff accepted the offer and arrived in the United States on September 20, 2023. Shortly after his arrival, in October 2023, Open Fiber USA terminated its relationship with Defendant. Because Open Fiber USA was its only customer, Defendant had no meaningful work to replace the work it lost. It had to significantly reduce its expenses, and it chose to do so by reducing the salaries of managerial employees. Most of the managerial employees were South African. These employees were salaried and received benefits, including a rental vehicle and housing and meal allowances. By contrast, Defendant did not reduce the compensation of its hourly employees, none of whom were South African. Hourly employees performed manual labor and did not have access to the same benefits as managerial employees.

Plaintiff received the following salary payments for the months of October 2023 through February 2024:

| Oct 2023 | Nov 2023 | Dec 2023 | Jan 2024 | Feb 2024 |
| --- | --- | --- | --- | --- |
| $6,963.19 | $5,000.00 | $5,600.00 | $5,600.00 | $5,720.00 |

In an email dated March 1, 2024, Plaintiff informed Defendant that he had decided to resign from employment, effective March 7, 2024. He stated that, absent a communication or a commitment to a payment plan for outstanding amounts owed to him, he would be seeking legal assistance. In response, Defendant informed Plaintiff that, given its current financial situation, it could not agree to a payment plan. Defendant assured Plaintiff that, once it was able to do so, it

would repay the amount owed. Defendant eventually paid Plaintiff $21,116.81, which Defendant contends was the total amount of Plaintiff's salary reduction.

On May 12, 2025, Plaintiff filed a complaint in this Court. He asserts six claims against Defendant: (1) national origin discrimination in violation of Title VII; (2) national origin discrimination in violation of the Illinois Human Rights Act; (3) unpaid wages in violation of the Fair Labor Standards Act; (4) breach of contract; (5) promissory estoppel; and (6) fraud.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV. P. 56); *accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). In assessing a summary judgment motion, the Court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). However, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (internal quotation marks and citation omitted)).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the moving party fails to meet its strict burden, the Court cannot enter summary judgment for the moving party even if the

opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986); *Modrowski*, 712 F.3d at 1168–69. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

III.   **ANALYSIS**

A.   Counts 1 and 2 – National Origin Discrimination in Violation of Title VII and the Illinois Human Rights Act ("IHRA"):

At the summary judgment stage, courts apply the same framework to Title VII and IHRA discrimination claims. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) (calling the frameworks "essentially identical"). Thus, although the Court will speak in terms of Title VII, its analysis applies equally to the IHRA.

Title VII prohibits discrimination on the basis of national origin:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). The Seventh Circuit has made clear that, in an employment

5

discrimination case, courts should focus on a single question: "[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Although there is no magic test, the well-known *McDonnell Douglas* framework provides a useful method for evaluating Plaintiff's claims, and the Court will apply it here.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination by presenting evidence that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (quoting *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018)). If a plaintiff successfully demonstrates each of these elements, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Id.* If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show the articulated reason is actually a pretext. *Id.* At the pretext stage, the plaintiff must provide evidence that the employer's stated reason for the adverse action is dishonest *and* that the true reason for the action was discriminatory intent. *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009). "[H]e ultimately must be able to point to some circumstances from which an inference can be drawn that the real reason for the employment action was discriminatory." *Id.* The ultimate burden of persuasion remains at all times with the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

6

Defendant has identified at least two genuine issues of material fact that preclude summary judgment. First, it argues that the employees to whom Plaintiff compares himself— those compensated at an hourly rate—are not similarly situated. "A similarly situated employee is one who is 'directly comparable [to the plaintiff] in all material aspects.'" *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). Relevant considerations include "whether the employees 1) had the same job description; 2) were subject to the same standards; 3) were subject to the same supervisor; and 4) had comparable experience, education, and other qualifications." *Id.* The hourly employees differed from the managerial employees in at least some respects. They were hired to perform manual labor, were compensated on an hourly basis, and did not receive the same benefits, including a rental vehicle and housing and meal allowances.

Second, it has articulated a legitimate, non-discriminatory reason for the salary reduction. Defendant lost its sole customer and, as a result, had no meaningful work. Accordingly, it needed to reduce its operating costs, and it chose to do so by reducing the salaries of its managerial employees. Plaintiff argues that this reason is pretextual because Defendant did not alter the pay structure of its hourly employees, all of whom were non-South African. But, as explained above, the hourly employees differed from the managerial employees in several respects. Since there are two genuine issues of material fact, Plaintiff is not entitled to summary judgment on Counts 1 and 2.

B. Count 3 – Unpaid Wages in Violation of the Fair Labor Standards Act ("FLSA"):

The FLSA requires employers to pay employees a minimum wage of at least $7.25 per hour. 29 U.S.C. § 206(a). An employer that fails to pay an employee the required minimum wage

is liable to the employee for the unpaid wages and an additional equal amount in liquidated damages. 29 U.S.C. § 216(b). Plaintiff argues that Defendant violated the FLSA by failing to pay him the promised salary of $12,000 per month. Instead, Plaintiff received monthly salaries of $6,963.19, $5,000, $5,600, $5,600, and $5,720, respectively. Plaintiff was a salaried employee and did not track the hours he worked each week. For the purposes of this motion, the Court assumes that Plaintiff worked a standard 40-hour work week.[2] Based on that assumption, Plaintiff's lowest monthly salary of $5,000 equates to an hourly rate of $31.25, which far exceeds the federal minimum wage. As such, Plaintiff is not entitled to summary judgment on Count 3.

C.   Count 4 – Breach of Contract:

In order to establish a breach of contract under Illinois law, a plaintiff must prove "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007).

Here, it is unclear whether there was a valid and enforceable contract that governed the relationship between the parties. To establish the existence of a contract, Plaintiff relies on: (1) the email communication between Plaintiff and Kriek, and (2) the offer letter that Kriek sent to Plaintiff. However, emails and offer letters, by themselves, generally do not constitute an enforceable employment contract. *See Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 680 (7th Cir. 2005); *Despot v. Combined Ins. Co. of Am.*, No. 03 C 7130, 2004 WL 1088361, at *2 (N.D.

---

[2] In his motion, Plaintiff states that he worked "upwards of forty hours per week." However, this assertion is not included in his statement of material facts, and the only evidentiary support he cites is Exhibit C, which the Court has disregarded for the purposes of deciding this motion.

Ill. May 12, 2004) (citing *Owens v. Second Baptist Church of La Grange*, 516 N.E.2d 712, 714–15 (Ill. App. Ct. 1987)). Since there is a genuine issue of material fact, Plaintiff is not entitled to summary judgment on Count 4.

     D.  Count 5 – Promissory Estoppel:

To succeed on a claim of promissory estoppel, a plaintiff must show the defendant made an unambiguous promise to him, that he relied on that promise to his detriment, and that his reliance was reasonable and was foreseeable by the defendant. *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

Plaintiff alleges that Defendant made three unambiguous promises to him: (1) the Operations Manager position would include a salary of $12,000 per month; (2) it would provide him with relocation assistance; and (3) it would give his wife an opportunity to work for the company. Based on the record before the Court, it is not clear that the final two promises were unambiguous. Kriek's statement that "[t]he $6,000.00 is intended to assist employees with settling in upon arrival," does not necessarily constitute a promise that Plaintiff would receive a $6,000 lump-sum payment. In addition, Kriek's statement that "[t]he company would like to give your wife the opportunity to work for us yes" does not establish a promise that Defendant would employ Plaintiff's wife. However, there is evidence that Defendant made one unambiguous promise to Plaintiff: that his salary would be $12,000 per month. There is also evidence that, in reliance on that promise, Plaintiff relocated with his family from South Africa to the United States.

Despite evidence of a promise and reliance on that promise, Defendant has identified two

genuine issues of material fact that preclude summary judgment. First, it is unclear whether Plaintiff's reliance was reasonable. The offer was for at-will employment, meaning Defendant could terminate Plaintiff's employment without cause at any time. Given the at-will nature of the employment relationship, a reasonable fact finder could conclude that Plaintiff's decision to relocate his entire life in reliance on the promise was unreasonable. Second, there is evidence that Plaintiff did not suffer a detriment from relying on the promise. Defendant informed Plaintiff that it would compensate him for the salary reduction and, consistent with that representation, paid him $21,116.81. Because there are two genuine issues of material fact, Plaintiff is not entitled to summary judgment on Count 5.

E.  Count 6 – Fraud:

An action for common fraud requires a plaintiff to prove five elements: (1) the defendant made a false statement of material fact, (2) the defendant knew the statement was false or made it in reckless disregard for the truth, (3) the defendant made the statement with the intent to induce the plaintiff to rely on it, (4) the plaintiff reasonably relied on the statement, and (5) the plaintiff suffered damage as a result. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). "The general standard for fraud refers to a false statement of material fact; promissory fraud, involving a false statement of intent regarding future conduct, is generally not actionable under Illinois law unless the plaintiff also proves that the act was a part of a scheme to defraud." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007).

Defendant has presented evidence that, when it made statements regarding the terms and conditions of Plaintiff's employment, it did not know those statements were false. Kriek sent Plaintiff the offer letter in May 2023, and Plaintiff arrived in the United States to work for

10

Defendant on September 20, 2023. It was not until the following month, October 2023, that Defendant lost its sole customer and was forced to reduce its operating costs. Given this timeline, a reasonable jury could conclude that Defendant did not know its statements were false when it made them to Plaintiff. Therefore, there is a genuine issue of material fact that precludes summary judgment on Count 6.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff Karel Van Dyk's Motion for Summary Judgment (Doc. 21).

**IT IS SO ORDERED.**
**DATED**: **July 22, 2026**

**J. PHIL GILBERT**
**United States District Judge**

11